UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BACIK GROUP L L C                      CASE NO.  2:21-CV-00447

VERSUS                                     JUDGE TERRY A. DOUGHTY

APEX DISASTER SPECIALISTS LOUISIANA   MAGISTRATE JUDGE KAY
L L C

### MEMORANDUM RULING

Pending before the Court is a Motion for Partial Summary Judgment [Doc. No. 24] filed by Plaintiff Bacik Group, LLC ("Bacik"). Defendant Apex Disaster Specialists, LLC ("Apex") filed a Response [Doc. No. 29]. Bacik filed a Reply [Doc. No. 30].

For the following reasons, the Motion is **GRANTED.**

## I.     BACKGROUND AND PROCEDURAL HISTORY

Bacik filed a Complaint[1] in this Court against Apex on February 24, 2021, under the basis of diversity. Bacik is seeking damages against Apex pursuant to Louisiana's law on "open accounts" and for breach of contract.[2]

Apex is a disaster restoration company, and Bacik is a subcontractor with whom Apex entered a Master Subcontractor Agreement ("Master Subcontract").[3] Pursuant to the Master Subcontract, Bacik, as subcontractor, would render services gutting and drying out homes damaged by Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. Essentially, Bacik was preparing the damaged homes for reconstruction and repair by Apex.[4]

---

[1] [Doc. No. 1]
[2] [Doc. Nos. 1, 24] La. R.S. 9:2781
[3] [Doc. No. 24-4]
[4] [Doc. No. 24-2, 24-3]

According to the Master Subcontract, Apex is required to pay Bacik 70% of the amount that Apex billed to each property owner and/or insurance carrier for the work performed by Bacik.[5] Payment was due within thirty days of delivery of the invoices.[6] Further, the Master Subcontract provided that Bacik reserved the right to pursue any and all remedies against Apex under the Louisiana open accounts statute[7] for unpaid sums in accordance with the invoices issued by Bacik.[8]

The following facts are undisputed: the parties entered the Master Subcontract; Bacik worked on sixteen (16) homes pursuant to the Master Subcontract; Apex dispatched invoices to the homeowners/insurance carriers for Bacik's work; Bacik dispatched sixteen (16) invoices to Apex in the sum of seventy percent (70%) of the Apex invoices, respectively; and Apex has not paid Bacik for the work.[9]

Bacik alleges that Apex, without Bacik's knowledge, negotiated reductions on seven of the sixteen invoices to the homeowners/insurance carriers. Bacik billed Apex on the original invoices for $323,463.99.[10] Bacik states that through discovery, it was revealed that after the reductions Apex allotted to the homeowners/insurance carriers, Apex billed customers a total of $286,715.35 for Bacik's work.[11] Apex was allegedly paid $277,656.29 for the work that Bacik did, but it has not paid any of the amount back to Bacik, even on the invoices that were not reduced.[12]

Bacik claims that Apex did not purport to object to the work Bacik did on the homes until after Bacik retained counsel to dispatch a demand letter on Apex for the unpaid invoices on November 23, 2022.[13] Bacik argues that the letter was sent "long after payment was due on 15 of

---

[5] [Doc. No. 24-4, p. 1, ¶ 4]
[6] [Id.]
[7] La. R.S. 9:2781
[8] [Id., ¶ 5]
[9] [Doc. Nos. 24-6 through 24-21]
[10] [Doc. No. 24-5]
[11] [Doc. No. 24-6 through 24-21]
[12] [Id.]
[13] [Doc. Nos. 24-22, 24-23]

the 16 Bacik Group invoices."[14] Bacik further asserts that the one remaining invoice for which payment was not yet due, i.e., for Tammy Toups  ("Toups") on 4004 Joseph Street, was not one of the seven reduced invoices.[15] Toups was billed $4,717.75 by Apex for Bacik's work, and she paid that amount in full.[16]

In its Motion, Bacik states that it is entitled at minimum to partial summary judgment for seventy percent (70%) of the nine original Apex invoices and seventy percent (70%) of the reduced invoices.[17] Bacik moves for partial summary judgment in the principal sum of $200,700.75, plus attorneys' fees, interest, and costs.

In response to Bacik's Motion, Apex argues that Bacik "breached the contract contributing to Apex's breach and there are offsets due" and further asserts that "a trial is necessary to determine facts including the sums due."[18] Apex also argues that attorney's fees cannot be assessed, and interest cannot begin to run until the sum due is determined by the Court.[19] Specifically, Apex alleges that Bacik's performance was defective for multiple reasons, including that Bacik did not have moisture readers; that Bacik overestimated how much its services would cost the customer; that Bacik added to its estimate the need for dryers; that Bacik made holes in the ceiling of one specific home it gutted; that Bacik failed to cover furniture and fixtures while performing its work; that Bacik did not use drop cloths to remove ceilings with spray-on insulation; that Bacik charged for a dumpster but failed to rent one; etc.

Apex asserts that Bacik is entitled to damages at the summary judgment stage but only for $125,352.26.[20] Apex states that it should continue on to trial to prove the proper offset caused by

---

[14] [Doc. No. 34, p. 2]
[15] [Doc. No. 24-14]
[16] [Id.]
[17] This would be 70% of $286,715.35. [Doc. No. 24-5]
[18] [Doc. No. 29, p. 1]
[19] [Id.]
[20] Apex, oddly, does not establish how it reached this number.

Bacik's alleged defective performance. And finally, Apex moves for the Court to order that interest begins to accrue from the moment a final judgment is rendered in the case determining the proper sum due, or from the date of judicial demand.

In its Reply[21], Bacik argues that Apex's response is devoid of any specific facts or record references supporting its assertions. It also argues that Apex has failed to cite to any contractual provision whereby its rights to claim defective performance after Apex dispatched its invoices are reserved. Apex also did not argue in its response that it refuted Bacik's claim that Apex never objected to Bacik's invoices until after the due date to pay fifteen of sixteen of the houses had run and the demand letter was sent. Nor was there any shred of evidence in Apex's response that it ever communicated the allegations for defective performance to Bacik until now.

The issues are briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### a.   Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence were to affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

---

[21] [Doc. No. 30]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

 In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23.  This

is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

Challenges to agency decisions are normally resolved on motions for summary judgment. *Berry v. Esper*, 322 F. Supp. 3d 88, 90 (D.D.C. 2018).

### b. Analysis

Bacik moves for partial summary judgment on the grounds that:

> (1) plaintiff is entitled to judgment pursuant to the Louisiana "open accounts" statute, LA-R.S. 9:2781, in the sum of 70 percent of the undisputed amount of invoices dispatched by defendant Apex Disaster Specialists Louisiana, LLC, to 16 homeowners/insurance carriers for Bacik Group's work under the Master Subcontract Agreement, dated August 27, 2020, between the parties, plus attorneys' fees pursuant to said statute, and (2) plaintiff is entitled to judgment on its second cause of action for breach of contract in the sum of 70 percent of the undisputed amount of invoices dispatched by defendant Apex Disaster Specialists Louisiana, LLC, to the aforementioned 16 homeowners/insurance carriers for Bacik Group's work under the Master Subcontract Agreement, plus attorneys' fees pursuant to said "open accounts" statute, and interest pursuant to LA-C.C. Art. 2000.

The Court will first analyze the open accounts claim, and then it will analyze the breach of contract claim.

### 1.  Louisiana "Open Accounts" L.A. R.S. 9:2781

Louisiana Revised Statute Section 9:2781 reads in pertinent part:

> A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is

> rendered in favor of the claimant. Receipt of written demand by the person is not required.
>
> D. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.

Bacik argues that its right to payment was not dependent on whether Apex was paid by the homeowners/insurance carriers, but rather its rights were attached solely to the Apex invoices. Bacik asserts that the legal inquiry should end here, and it is content seeking judgment for seventy percent (70%) of the sum of both the reduced and unreduced Apex invoices. However, Bacik asserts that it may also reserve for trial the issue of whether it is entitled to seventy percent of the total amount by which Apex reduced seven of its original invoices. However, there are no explanations in those seven invoices explaining why there was a reduction offered.

Importantly, Bacik states that Apex did not object to any of its work within the 30-day window in which the invoices were due. Bacik asserts that the fact that Apex invoiced all of the jobs is a sign of acceptance of Bacik's work.

The amount due on an open account is a question of fact, and the trial judge's finding may not be disturbed absent manifest error. *Seale & Ross, P.L.C. v. Holder*, 19-1487 (La. App. 1 Cir. 8/3/20), 310 So.3d 195, 200. In an action on an open account, the plaintiff bears the burden of proving his demand by a preponderance of the evidence. *Seale*, 310 So.3d at 200. The plaintiff must first prove the account by showing that it was kept in the ordinary course of business and by introducing supporting testimony as to its accuracy. *Id*. "Once a prima facie case has been

established by the creditor, the burden shifts to the debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits." *Doerle Food Servs., L. L.C. v. River Valley Foods, L.L.C.,* 52,601 (La. App. 2 Cir. 5/22/2019), 273 So.3d 656.  "Attorney fees are not allowed except where authorized by statute or contract. The portion of La. R.S. 9:2781 allowing for attorney fees is penal in nature and is to be strictly construed." *Id*.

The Court finds that Bacik has met its burden of proving its demand for damages by a preponderance of the evidence. It has supplied countless exhibits supporting its argument, and it has disproved Apex's arguments at every turn. Further, Bacik has shown the Court that the account was kept in the ordinary course of business and has introduced supporting testimony to support this (in the form of twenty-one exhibits).

Because the Court finds Bacik has established a prima facie case for an open account, the burden then shifts to Apex to prove the inaccuracy of the account or to prove that it is entitled to certain credits. The Court finds that Apex's allegations or arguments for why Bacik's account is inaccurate and/or why it is entitled to certain credits is not convincing. Although Apex makes numerous claims as they relate to Bacik's supposed "defective performance," Apex did not substantiate any of these claims with evidence. Further, the Court agrees with Bacik that Apex never objected to Bacik's invoices until after the due date to pay fifteen of sixteen of the houses had run and the demand letter was sent. Apex has also failed to show to the Court any instance where it reserved a right to claim defective performance after Apex dispatched its invoices either contractually or statutorily.

For these reasons, the Court finds that Bacik is entitled to payment from Apex on seventy percent of the sum of both the unreduced and reduced Apex invoices. Further, the Court finds that Bacik is entitled to an award of attorneys' fees.

### 2.  Breach of Contract

Bacik further asserts that Apex is liable for damages pursuant to Bacik's second cause of action for breach of contract, which includes interest on the sums due.

La. C.C. Art. 1994 provides that "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance." "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived." La. C.C. Art. 1995. "When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest, as fixed by La. R.S. 9:3500." La. C.C. Art. 2000. La.

The Court finds that Bacik is entitled to partial summary judgment in the principal sum of $200,700.75 and judicial interest in accordance with the law.

### III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Partial Summary Judgment [Doc. No. 24] filed by Plaintiff Bacik Group, LLC is **GRANTED**.

**IT IS FURTHER ORDERED** that Bacik is entitled to judgment against Apex in the principal sum of $200,700.75, plus judicial interest in accordance with the law.

**IT IS FURTHER ORDERED** that Bacik's request for attorneys' fees is **GRANTED**. Bacik shall file a motion for request for attorneys' fees and costs on or before March 1, 2023.

MONROE, LOUISIANA, this 1st day of February 2023.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE